Filed 7/7/26  In re M.C. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re M.C., a Person Coming Under the Juvenile Court Law. | B350954<br><br>(Los Angeles County<br>Super. Ct. No. 23CCJP02936A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>       Plaintiff and Respondent,<br><br>       v.<br><br>BRIANNA S.,<br><br>       Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge.  Affirmed.

Akila A. Shenoy, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

Brianna S. (mother) challenges a juvenile custody order awarding child M.C.'s father (C.C.) monitored visits once per month, one hour per visit. We find no abuse of discretion and affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

In December 2023, the juvenile court sustained a dependency petition finding seven-year-old M.C. to be a person described by Welfare and Institutions Code section 300, subdivision (b).[1] The petition alleged mother failed to protect M.C. from mother's male companion who abused substances and physically abused mother and M.C. The petition also alleged that father neglected M.C. by not providing any care for him in the prior seven years and by failing to provide him with the basic necessities of life. The petition further alleged that "[r]eportedly," in June 2016, father put a gun to mother's head and threatened her life while she was holding M.C.

Mother initially told the Los Angeles County Department of Children and Family Services (DCFS) that she did not know the identity of M.C.'s father. However, father had signed M.C.'s birth certificate. The juvenile court found C.C. to be M.C.'s presumed father. Social workers located him living in Nevada. Father told a social worker he was confident he was M.C.'s biological father and he was willing to submit to a DNA test. He denied any domestic violence with mother. Father said "he has not had contact with child since child was born. [Father] stated that he has only had one telephonic contact." He indicated he would

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

2

have to talk to his girlfriend before "committing to anything," and he would let DCFS know "if he is willing to fully commit to take care of the child." Father did not request visits with M.C.

At the disposition hearing, the juvenile court ordered reunification services for father, including monitored visits. In the months that followed, social workers made appointments for father to submit to paternity testing, as he said he wanted the results before participating in services. Father did not submit to the testing and stopped responding to social worker e-mails. His phone number was disconnected. DCFS was unable to contact him. At the six-month review hearing, the juvenile court terminated father's reunification services.

Mother successfully participated in reunification services. The juvenile court returned M.C. to her custody. Eventually, in September 2025, the juvenile court terminated dependency jurisdiction and awarded mother sole physical and legal custody. At the final hearing, mother asked that the court order no visits for father in the juvenile custody order because he had no relationship with M.C. Mother asked that if the court was not inclined to "deny father's visits," that it instead allow father to have only monitored visits, "minimum once a year for one hour, either with a mutually agreed upon monitor, [or] a professional monitor, paid for by father." The juvenile court issued a juvenile custody order allowing father one monthly visit, for one hour, monitored by a mutually agreed upon monitor or a professional monitor paid for by father. At the hearing, the court explained to mother: "If [father] does not come around, does not take advantage of it, it's his loss, you don't have to worry about it."

Mother timely appealed.

## DISCUSSION

Mother contends the juvenile court abused its discretion by including visitation for father in the juvenile custody order.  She argues the juvenile court was required to make "affirmative findings" that visitation with father would benefit M.C. and it failed to do so; father's presumed status did not entitle the court to assume that visitation would be in M.C.'s best interest; there was no indication M.C. would be comfortable with visits; and there was evidence M.C. was generally anxious around men.  Mother further asserts the sustained allegation naming father in the petition, father's failure to participate in services or the proceedings, and his failure to request visits with M.C. all indicated that visitation with father would not be in M.C.'s best interest.

" '[T]he juvenile court has broad discretion to make custody [and visitation] orders when it terminates jurisdiction in a dependency case (§ 362.4).'  [Citation.]  We review the juvenile court's exit orders for an abuse of that discretion.  [Citations.]  We will not disturb the juvenile court's decision ' " 'unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.' " ' [Citation.]" (*In re J.M.* (2023) 89 Cal.App.5th 95, 112–113 (*J.M.*).)

We agree with mother that the juvenile court was not required to apply family law presumptions regarding visitation.  It is also well established that the juvenile court must consider a child's best interest when issuing a visitation order under section 362.4.  (*J.M.*, *supra*, 89 Cal.App.5th at p. 112.)  Mother is incorrect, however, to the extent she contends the juvenile court was required to deny father all visitation unless it *expressly* found

4

that such visits *would* be in M.C.'s best interest.  Mother identifies no legal authority for this argument, and we are aware of none.[2]

Here, the juvenile court had very little evidence to consider to determine whether visitation with father would be beneficial or detrimental to M.C.  As mother points out, father had no relationship with M.C. and no contact with him.  Yet, lack of past contact did not necessarily demonstrate that any future contact was not in M.C.'s best interest.  The domestic violence between father and mother was seven years earlier.  Aside from a single undated telephone call, there is no evidence that the parents had any contact with each other after that time.  The juvenile court could only speculate as to whether M.C.'s worries about mother being in a relationship with a man, or M.C.'s desire to protect mother, would translate into distress if father visited him.

---

[2]     Elsewhere in her appellate briefing, mother primarily relies on two cases.  The court in *In re C.C.* (2009) 172 Cal.App.4th 1481, 1492, discussed only the "statutory directive mandating parental visitation unless there exists substantial evidence of a threat to the child's safety" during the reunification period.  *J.M.* considered a father's argument that the juvenile court could not issue an order granting the mother sole physical custody without finding by clear and convincing evidence that joint custody would be detrimental to the children.  In that context, the court explained: "Section 362.4 does not require a finding of detriment under any circumstances; as a result, courts have applied the best interest standard in determining appropriate custody and visitation exit orders at this stage." (*J.M.*, *supra*, 89 Cal.App.5th at p. 113.)  The court did not consider what standard applies when a party asks the juvenile court to expressly deny a noncustodial parent visitation in an "exit" order.

Meanwhile, father had signed M.C.'s birth certificate and was deemed presumed. His parental rights remained intact.

Under these circumstances, the juvenile court did not abuse its discretion in issuing a juvenile custody order with minimal visitation for father, under controlled circumstances. The order provided father with only one monitored visit each month, for one hour. As the court explained, the order provided father with visits *if* he should seek them out. Mother was under no obligation to attempt to make the visits happen.

The juvenile court could reasonably conclude that having a visitation order in place that afforded father limited, monitored visits was in M.C.'s best interest should father attempt contact in the future. The juvenile court could reasonably determine that it did not have sufficient evidence to deny father all visitation. And leaving the order silent as to visitation would allow father to seek visitation rights in the future from a family law court, without any preexisting limitations or restrictions. (See *Feist v. Feist* (1965) 236 Cal.App.2d 433, 436 ["In the absence of a provision expressly denying the right of visitation in a custody order a parent deprived of custody is entitled to reasonable visitation as a matter of natural right."].) The visitation order set distinct boundaries on any contact between M.C. and father, while still permitting the possibility of a relationship between them in the future.

" ' "A merely debatable ruling cannot be deemed an abuse of discretion." ' [Citations.]" (*Jones v. Solgen Construction, LLC* (2024) 99 Cal.App.5th 1178, 1203.) The juvenile court's visitation order was not arbitrary, capricious, or patently absurd. We find no basis for reversal.

## DISPOSITION
The juvenile court order is affirmed.
## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



ADAMS, J.


We concur:



EGERTON, Acting P. J.



HANASONO, J.